IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JAN 27 2014

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | | |
|---|---|---|
| TIMOTHY F. HAYES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:13-CV-760-A |
| | § | |
| BANK OF AMERICA, N.A., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

Now before the court is the motion of defendant, Bank of America, N.A., to dismiss the complaint of plaintiff, Timothy F. Hayes, pursuant to Rule 9 and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiff filed a response and a first amended complaint.  Defendant filed a reply, addressing the arguments in plaintiff's response and requesting dismissal of plaintiff's first amended complaint.  After having considered all the parties' filings and applicable legal authorities, the court concludes that the motion to dismiss should be granted in part and denied in part.

I.

Background

Plaintiff initiated this removed action by a pleading filed in the District Court of Tarrant County, 352nd Judicial District, against defendant, in Cause No. 352-267386-13, seeking damages, declaratory relief, and recision related to the foreclosure of his property.  Defendant removed the action to this court within 30 days of being served, alleging that this court has diversity jurisdiction under 28 U.S.C. § 1332.

Plaintiff makes the following factual allegations in his first amended complaint:

On or about September 15, 2006, plaintiff and his ex-wife purchased property on Golden Gate Drive in Southlake, Texas, and executed a mortgage note and deed of trust.  Defendant, by and through Mortgage Electronic Registration Systems, Inc., is the mortgagee and beneficiary of the deed of trust that was filed in Tarrant County on or about September 28, 2006.  Plaintiff and his ex-wife began making payments on the mortgage at that time.  However, plaintiff, a realtor, began having financial difficulties after the financial collapse in 2008, and plaintiff and his ex-wife divorced.  Plaintiff filed for Chapter 7 bankruptcy on or about May 20, 2011.  During the pendency of that bankruptcy, plaintiff and defendant entered into a reaffirmation

2

agreement, allowing plaintiff to retain possession of the property and continue to pay the note, and defendant became aware that plaintiff had moved off the property and acquired a tenant. Although, plaintiff was discharged from bankruptcy on or about August 17, 2011, and continued as owner of the subject property, he continued to have financial difficulties and fell behind on the note at the end of 2011.

In or around January 2012, defendant approached plaintiff about entering the Home Affordable Modification Program ("HAMP") to refinance the note on plaintiff's property.  In February 2012, plaintiff applied for acceptance to HAMP, submitted all required documentation, and was assigned an account representative by defendant.  Plaintiff was forbidden by defendant from making any payments on the mortgage during the time he applied for and was awaiting acceptance to HAMP.  In or around February 2012, plaintiff was assigned a Customer Relationship Manager, Dina R. Brown ("Brown"), who told plaintiff not to make any payments on his loan and that any such payments would be returned and would dely the modification process.

However, in or around February 2012, defendant, by and through its substitute trustee and assorted law firms, began sending plaintiff notices of acceleration and demands for payments, showing differing amounts due.  Plaintiff's nonpayment

of the loan was reported to the credit reporting bureaus.
Beginning in or around March 2012, defendant, by and through its
substitute trustee, posted plaintiff's property for foreclosure
at least six times due to non-payment of the loan, directing the
substitute trustee to postpone the sale on each occasion.  Such
actions injured plaintiff's business.

Between February and September 2012, Brown told plaintiff
over the phone and through email that the modification was
finished or almost finished and was just waiting on paperwork
from and/or finalization by the underwriters.  Therefore,
plaintiff believed that defendants had prepared a loan
modification agreement that had not been forwarded to plaintiff.

Plaintiff attempted to make payments to defendant on several
occasions, but defendant refused the payments and told plaintiff
to stop making payments until the modification was approved.
Defendant assured plaintiff that he would be approved for the
modification and that the foreclosure posting was an error and
not to be concerned about such postings.  Defendant also
represented that the missed payments would not form the basis of
any subsequent default and foreclosure.

On August 24, 2012, Brown told plaintiff that he was
approved for the modification.  However, after receiving notice
of acceleration and trustee's sale on October 2, 2012, and being

assured by defendant it was not a concern, plaintiff received notice that his modification had been denied.  Defendant gave plaintiff several reasons for the denial, including incorrect information on the paperwork and application, issues with plaintiff's income, the fact that plaintiff was renting the property to a tenant, and the assertion that plaintiff had applied for the wrong modification program, even though defendant had not offered plaintiff multiple options for modification.

Plaintiff filed for bankruptcy on October 2, 2012, to halt the foreclosure proceeding and negotiation with defendant. Defendant told plaintiff he should apply for an in-house loan modification, for which he was pre-approved and which had a much higher interest rate than the HAMP.

## II.

### Plaintiff's Claims and Grounds of Defendant's Motion

The complaint alleges the following causes of action against defendant: (1) common law fraud; (2) negligent misrepresentation; (3) breach of contract; (4) waiver of default; and (5) promissory estoppel.[1]  Plaintiff also asserts theories of agency and respondeat superior.  Defendant contends that the complaint fails to state a claim upon which relief may be granted because (1)

---

[1] In his first amended complaint and his response to defendant's motion to dismiss, plaintiff abandons his Texas Deceptive Trade Practices Act and fraud in a real estate transaction claims.

5

plaintiff's fraud claim is not pleaded with the specificity required by Rule 9 of the Federal Rule of Civil Procedure and is also barred by the economic loss doctrine; (2) plaintiff's negligent misrepresentation claim is barred by the economic loss doctrine and plaintiff cannot show that defendant owed him a duty or that defendant had liability for an alleged promise of future conduct; (3) plaintiff's breach of contract claim is barred by his own breach and by the statute of frauds; (4) plaintiff's waiver claim is precluded by the terms of the deed of trust and the statute of frauds; and (5) plaintiff's promissory estoppel claim is barred by the statue of frauds and no facts are alleged that would support the promissory estoppel claim as a defense to the statute of frauds.

III.

Standards Applicable to Motion to Dismiss

The court now considers the standard of pleading, and applies these standards to the Complaint.  Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading.  It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," <u>Bell Atl. Corp. v. Twombly</u>, 550

6

U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted).  Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiffs to do more than simply allege legal conclusions or recite the elements of a cause of action. See Twombly, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings.  See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiffs' right to relief is plausible.  Iqbal, 129 S. Ct. at 1950.  To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient.  Twombly, 550 U.S. at 566-69.  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.

IV.

Application of Law to Facts

A.   Common Law Fraud and Negligent Misrepresentation

Defendant asserts that plaintiff has not pleaded his fraud claim with the required particularity.  Plaintiff's fraud claim is governed by the pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure.  See Lone Star Fund V (U.S.), LP v. Barclays Bank PLC, 594 F.3d 383, 387 n.3 (5th Cir. 2010). Rule 9(b) requires "a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  Herrmann Holdings Ltd. v. Lucent Techs. Inc., 302 F.3d 552, 564-65 (5th Cir. 2002) (internal quotation marks and citations omitted).  To satisfy this requirement, plaintiff must allege "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby."  Tuchman v. DCS Commc'ns Corp., 14 F.3d 1061, 1068 (5th Cir. 1994) (internal quotation marks omitted). In his first amended complaint, plaintiff alleges that Dina R. Brown, an employee of defendant, on specific dates or over a range of dates, made particular representations to plaintiff regarding loan modification and foreclosure.  Plaintiff also

8

alleges that defendant obtained certain benefits by making such representations and that plaintiff sustained damages by relying on them.   Therefore, the court finds that plaintiff has sufficiently pleaded his fraud claim under the heightened pleading standard of Rule 9.

Defendant also contends that plaintiff's negligent misrepresentation claim fails because he cannot show that defendant owed him a legal duty and because such a claim cannot be based on promises of future conduct.   A negligent misrepresentation claim under Texas law consists of four elements: "1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation."  Gen. Elec. Capital Corp. v. Posey, 415 F.3d 391, 395-96 (5th Cir. 2005) ( quoting Clardy Mfg. Co. v. Marine Midland Bus. Loans, Inc., 88 F.3d 347, 357 (5th Cir.1996)) (internal quotation marks omitted).   Clearly, plaintiff need not show that defendant owed him a legal duty to state a claim for negligent misrepresentation.

9

However, the court agrees with defendant that a negligent misrepresentation claim cannot be based on promises of future conduct. <u>See</u> <u>Milton v. U.S. Bank Nat. Ass'n</u>, 508 F. App'x 326, 329 (5th Cir. 2013); <u>BCY Water Supply Corp. v. Residential Inv.</u>, Inc., 170 S.W.3d 596, 603 (Tex. App.--Tyler 2005). Therefore, to the extent that plaintiff's claim for negligent misrepresentation is based on defendant's promises that it would approve plaintiff's loan modification, that missed payments would not harm plaintiff, or that it would delay foreclosure, plaintiff's claim must fail.

Further, plaintiff's common law fraud and negligent misrepresentation claims are both tort claims that are barred as a matter of law by the economic loss doctrine. Under Texas law, the economic loss doctrine "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." <u>Lamar Homes, Inc. v. Mid-Continent Cas. Co.</u>, 242 S.W.3d 1, 12 (Tex. 2007). Therefore, claims for these tort claims require injury to plaintiff independent of an alleged breach of contract. <u>See</u> <u>Pennington v. HSBC Bank U.S.A., Nat'l Ass'n</u>, No. A-10-CA-785 LY, 2011 WL 6739609 at *8 (W.D. Tex. Dec. 22, 2011) (applying the economic loss rule to negligent misrepresentation claim); <u>Casey v. Fed. Home Loan Mortgage Ass'n</u>, No. H-11-3830, 2012 WL 1425138, at *3-4 (S.D. Tex. Apr.

10

23, 2012) (applying economic loss rule to fraud claim). "When an injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 45 (Tex. 1998). Thus, tort damages are generally recoverable if the defendant's conduct "would give rise to liability independent of the fact that a contract exists between the parties," but not if it "would give rise to liability only because it breaches the parties' agreement." Sw. Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494 (Tex. 1991).

Although plaintiff's common law fraud and negligent misrepresentation claims contain some different elements, each is a claim that could not exist apart from the underlying note and deed of trust. Plaintiff clearly had a contractual relationship with defendant prior to their discussions regarding loan modification and foreclosure proceedings, and such discussions involved modification to the existing contract. Defendant could not have made any representations regarding a modification of the terms of the loan or the effects of such modification had there not been an original agreement between the parties. Further, defendant's alleged promises about delaying foreclosure related to the rights provided to defendant under the existing note and deed of trust. Therefore, because plaintiff's tort claims for

11

fraud and negligent misrepresentation "flow solely from the note and deed of trust," they are barred by the economic loss rule and must be dismissed. Casey, 2012 WL 1425138, at *4.

B.   Promissory Estoppel

Plaintiff asserts an independent cause of action for promissory estoppel. Under Texas law, "[w]hen a promisor induces substantial action or forbearance by another, promissory estoppel prevents any denial of that promise if injustice can be avoided only by enforcement." In re Weekley Homes, L.P., 180 S.W.3d 127, 133 (Tex. 2005). To state a claim for promissory estoppel where an oral promise would be barred by the statute of frauds, such as a loan modification or a promise to delay foreclosure, plaintiff must allege that defendant promised to sign a written document in existence at the time. See Martins v. BAC Home Loans Servicing, L.P., 722 F.3d 249, 256-57 (5th Cir. 2013).

Plaintiff asserts that defendant promised him that (1) it would grant the loan modification, (2) it would not foreclose on the property because of missed payments while the loan modification was pending, and (3) he would not be in a worse position for failing to make such payments. Plaintiff claims that he detrimentally relied on defendant's repeated promises of loan modification and complied with defendant's demands that he not make payments during the modification process. Therefore,

12

plaintiff concludes that injustice can only be avoided by requiring defendant to honor its commitments.

Plaintiff makes the following factual allegations relevant to his promissory estoppel claim in the first amended complaint:

During the application and approval process for the loan modification, defendant repeatedly told plaintiff not to make payments on the loan. Beginning around March 2012, defendant posted the subject property for foreclosure at least six times. On several occasions, plaintiff attempted to make payments to avoid foreclosure, but defendant declined the payments; defendant told plaintiff to wait to make any payments until the loan was modified, which was imminent. Plaintiff was told that the foreclosure notice was an error and that he should not be concerned about the postings. Defendant repeatedly told plaintiff that "his modification was nearly done or was done and that Defendant was just waiting on 'the underwriters' to finalize the modification and/or paperwork." First Am. Compl. at 5, ¶ 32. On several occasions, defendant told plaintiff "that he was approved for the modification, and that they were awaiting the loan documents to be forwarded from 'underwriting.'" Id. at 8, ¶ 43. "Based on Defendant's representations that a loan modification was certain and imminent, [plaintiff] believed Defendant in fact prepared a specific loan modification agreement

but never forwarded that document to Plaintiff." Id. at 8, ¶ 44.
"To the extent any terms of that agreement are not clear or not
filled in, the core terms may be determined from a formula that
Defendant uses to calculate loan modification terms--interest
rate, monthly payment, loan balances, and other core terms based
on Plaintiff's income profile." Id. at 8, ¶ 45. Defendant
necessarily would have been the sole drafter of the agreement,
and "[d]efendant uses standard forms (uniform instruments and
loan modification templates, for example) and computation
procedures that determine the terms of loan modifications, and
these are in the sole possession and control of Defendant,
without borrower input." Id. at 8-9 ¶¶ 45-46.  In his response,
plaintiff states that he seeks discovery of the loan modification
agreement or the terms of the promised modification based on the
standard formulae.

The Fifth Circuit has held, in an unpublished opinion, that
a mortgagor's promissory estoppel claim survived a Rule 12(b)(6)
motion under strikingly similar facts.  See Martin-Janson v. JP
Morgan Chase Bank, N.A., No. 12-50380, 2013 WL 3533682, at *5
(5th Cir. July 15, 2013) (unpublished opinion).[2]  The Fifth

---

[2] The Fifth Circuit stated that the mortgagor, Martin-Jenson, made the following factual allegations in her amended complaint:
> 1) "[JPMorgan] repeatedly stated that a loan modification was imminent and that she should not make payments until the modification came through;" 2) "In February 2011,
(continued...)

14

Circuit concluded that based on the factual assertions "and the reasonable inferences to be drawn therefrom," the mortgagor had pleaded a plausible promissory estoppel claim which potentially avoided the defendant's statute of frauds defense. <u>Id.</u> Likewise, this court is persuaded that plaintiff has pleaded sufficient "factual content that allows the court to draw the reasonable inference" that defendant made certain promises to plaintiff which potentially avoided the statute of frauds. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

Therefore, the court is denying defendant's motion to dismiss as to plaintiff's promissory estoppel claim and, as

---

²(...continued)
when [Martin-Janson] began receiving acceleration warnings, [she] called [JPMorgan] to ask why. Chase again told her that a loan modification would be forthcoming, indicating that the foreclosure notice was in error;" 3) "Based on [JPMorgan's] representations that a loan modification was certain and imminent, [Martin-Janson] believed [JPMorgan] in fact prepared a specific loan modification agreement but never forwarded that document to [her]"; 4) "[T]o the extent any terms of that agreement are not clear or not filled in, the core terms may be determined from a formula that [JPMorgan] uses to calculate loan modifications--interest rate, monthly payment, loan balances, and other core terms based on [Martin-Janson's] income profile"; and 5) "JPMorgan uses standard forms (uniform instruments and loan modification templates, for example) and computation procedures that determine the terms of loan modifications, and these are in the sole possession and control of [JPMorgan], without borrower input."

Based on the foregoing factual allegations, Martin-Janson asserts that she seeks discovery to reveal either the draft loan modification agreement that JPMorgan allegedly prepared, or the terms of her promised modification based on the lender's standard formulae. In these ways, Martin-Janson argues, she would be able to prove that JPMorgan "promise[d] to sign a written agreement which itself complies with the statute of frauds," <u>"Moore" Burger</u>, 492 S.W.2d at 940. <u>See also</u> <u>Martins</u>, 722 F.3d at 256-57 (citations omitted).

<u>Martin-Janson</u>, 2013 WL 3533682, at *5. The court recognizes that the unpublished opinion in <u>Martin-Janson</u> is not precedent, but the court finds its holding instructive in this action.

15

indicated below, as to plaintiff's claim for breach of contract of the loan modification agreement.  Plaintiff will have the burden to establish the existence of a written contract that defendant had prepared and promised to sign.  The court's ruling does not prevent defendant from filing a motion for summary judgment as to each of the above-mentioned claims after plaintiff has had a reasonable opportunity to attempt to develop through discovery the existence of such a written contract.

C.   Breach of Contract

In his first amended complaint, plaintiff asserts broadly that "the actions and/or omissions of Defendant described hereinabove constitute breach of contract" and that defendant told him "he was approved for the modification, despite the fact that Defendant had not approved the modification and had no intention of modifying the loan."  First Am. Compl. at 11. Plaintiff asserts in his response to defendant's motion to dismiss that he is alleging breach of the note and deed of trust as well as breach of the loan modification agreement.  Therefore, the court will address each breach of contract claim in turn.

1.   Breach of Note and Deed of Trust

The elements of a breach of contract claim in Texas are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract

by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." Mullins v. TestAmerica, Inc., 564 F.3d 386, 418 (5th Cir. 2009) (internal quotation marks and citation omitted). However, a party who is in default cannot assert a claim for breach against the other party. Dobbins v. Redden, 785 S.W.2d 377, 378 (Tex. 1990) (internal quotation marks and citation omitted). Because plaintiff admits in his first amended complaint that he fell behind on his payments to defendant and that defendant finally foreclosed on the subject property due to missed payments, he cannot state a claim for breach of contract based on the note and deed of trust. Although plaintiff contends that defendant instructed him not to make payments while his application for modification was being evaluated, such alleged actions by defendant occurred after plaintiff had already breached his obligations to defendant. Plaintiff acknowledges that he was in breach of the original loan agreement prior to any modification attempt. Therefore, plaintiff's breach of contract claim based on the note and deed of trust must be dismissed.

2. Breach of Loan Modification Agreement

Defendant asserts that plaintiff has failed to allege the existence of a written loan modification contract that defendant promised to sign. Texas law provides that a loan agreement of $50,000.00 or more "is not enforceable unless the agreement is in

writing and signed by the party to be bound or by that party's
authorized representative."  Tex. Bus. & Com. Code § 26.02(b).  A
"loan agreement" includes any promise, agreement, understanding,
or commitment pursuant to which any financial institution delays
repayment of money or otherwise makes a financial accommodation.
Id. § 26.02(a)(2).  Thus, any modifications to such a loan
agreement are also required to be in writing in order to be
enforceable.  Gordon v. JPMorgan Chase Bank, N.A., 505 F. App'x
361, 364 (5th Cir. 2013) (unpublished opinion) (citing
Dracopoulas v. Rachal, 411 S.W.2d 719, 721 (Tex.1967)); Bank of
Tex., N.A. v. Gaubert, 286 S.W.3d 546, 555-56 (Tex.App.--Dallas
2009, pet. dism'd w.o.j.).

Plaintiff admits that he was never given a written agreement
for a loan modification but argues that he and defendant had
agreed to the terms of the loan modification and that he was
"only awaiting the paperwork to be forwarded" to him, Resp. at 7,
in essence asserting promissory estoppel as a defense to the
statute of frauds.  "Promissory estoppel may overcome the
statute-of-frauds requirement in Texas, but 'there must have been
a promise to sign a written contract which had been prepared and
which would satisfy the requirements of the statute of frauds.'"
Martins, 722 F.3d at 256-57 (quoting Beta Drilling, Inc. v.
Durkee, 821 S.W.2d 739, 741 (Tex. App.--Houston 1992, writ

denied)).   As explained above, plaintiff has pleaded sufficient facts from which the court can draw the reasonable inference that defendant made certain promises regarding loan modification to plaintiff which potentially avoided the statute of frauds. Therefore, plaintiff's breach of contract claim as to the loan modification agreement cannot be dismissed.

D.   <u>Waiver of Default</u>

Plaintiff contends that defendant waived its rights to acceleration, foreclosure sale, and payments after January 2012. Under Texas law, waiver is "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." <u>Jernigan v. Langley</u>, 111 S.W.3d 153, 156 (Tex.2003) (per curiam) (quoting <u>Sun Exploration & Prod. Co. v. Benton</u>, 728 S.W.2d 35, 37 (Tex.1987)) (internal quotation marks omitted); <u>see also</u> <u>Addicks Servs., Inc. v. GGP-Bridgeland, LP</u>, 596 F.3d 286, 298 (5th Cir. 2010).   "Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances." <u>Jernigan</u>, 111 S.W.3d at 156; <u>see also</u> <u>Addicks Servs., Inc.</u>, 596 F.3d at 298.

Plaintiff alleges that defendant "engaged in intentional conduct inconsistent with any intent to maintain foreclosure proceedings" by not demanding payment after plaintiff entered the

19

modification process, instructing plaintiff not to make such payments, and noticing foreclosure but telling plaintiff that foreclosure would not go forward. Plaintiff also contends that defendant waived its right to payments after January 2012 by preventing plaintiff from making payments while the loan modification was being processed. Although, defendant correctly points out that such allegations are based upon purported oral representations by defendant to modify plaintiff's loan, as explained above, plaintiff has sufficiently pleaded a plausible promissory estoppel claim which potentially avoids the defendant's statute of frauds defense.

However, plaintiff's waiver claim is expressly precluded by the Deed of Trust. Defendant has attached to its motion to dismiss copies of the promissory note and deed of trust related to the subject property. Although the court cannot look beyond the pleadings in deciding defendant's motion to dismiss, see Spivey v. Robertson, 197 F.3d 772, 774 (5th Cir. 1999), "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir.1993)) (internal quotation marks omitted);

20

see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010) ("The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.").  Here, because plaintiff referenced the promissory note and deed of trust in his first amended complaint and such documents are central to his claim, the court may consider those documents in deciding defendant's motion to dismiss.

The deed of trust provides the following:

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrow or any Successors in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. <u>Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successor in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.</u>

Mot. to Dismiss, Ex. B at 16, ¶ 12 (emphasis added).[3]
Plaintiff was admittedly in default under the original loan
agreement before beginning the loan modification process and
being told not to remit payments.  According to the terms of
the deed of trust, defendant did not waive its right to
foreclose on the subject property by deciding to delay
foreclosure and forgo payments for a time.  <u>Accord</u>
<u>Martin-Janson</u>, 2013 WL 3533682, at *3 ("The fact that the
bank did not formally pursue foreclosure sooner than June
2011 does not indicate that it intended to relinquish its
rights to foreclose, a conclusion which the terms of the
loan agreement make plain.").  Therefore, plaintiff's waiver
claim must be dismissed.

V.

<u>Order</u>

Therefore,

The court ORDERS that the motion to dismiss filed by
defendant be, and is hereby, granted in part, and that all
claims and causes of action asserted by plaintiff against
defendant except plaintiff's claims for promissory estoppel

---

[3] Plaintiff argues in his response to defendant's motion to dismiss that the oral
modification agreement "subsumed and superseded" the original loan agreement and that the
terms of that agreement can no longer be enforced.  Resp. at 9, ¶ 41.  However, the court finds
plaintiff's argument inconsistent with his position that defendant has breached the original note
and deed of trust and that such agreements should be enforced against defendant.

22

and breach of contract as to the loan modification agreement
be, and are hereby, dismissed with prejudice.

    SIGNED January 27, 2014.

                           JOHN McBRYDE
                           United States District Judge